**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Melvin Graham

      v.                                            Civil No. 07-cv-247-JL

Nadeau, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Melvin Graham has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants have abridged his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and New Hampshire law (document no. 1). Named as defendants are Phil Stanley, former Commissioner of the New Hampshire Department of Corrections ("NHDOC") and the following employees of the Northern New Hampshire Correctional Facility ("NCF"): Larry Blaisdell, Warden; Tina Withington, Head of Classifications; and corrections officers John Lovan, Nadeau, Sweatt, Newton, Reindeaux and an unnamed trainee.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted. See 28 U.S.C. § 1915A; U.S.

District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I find that Graham has alleged the following claims: (1) Fourth Amendment claims, arising from unreasonable strip searches, against Blaisdell, Stanley, Nadeau, Lovan, Sweatt and an unidentified trainee; (2) Eighth Amendment claims, arising from malicious strip searches, against Blaisdell, Stanley, Nadeau, Lovan, Sweatt, Newton and an unidentified trainee; and (3) state law claims, based on intentional infliction of emotional distress, against Blaisdell, Stanley, Nadeau, Lovan, Sweatt and an unidentified trainee.  I recommend dismissal of all remaining claims.

<u>STANDARD OF REVIEW</u>

Under this court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the court construes pro se pleadings liberally, however inartfully pleaded.  See <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972) to construe pro se

pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and an unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id.  This review ensures that pro se pleadings are given fair and meaningful consideration.

BACKGROUND

Graham is currently incarcerated as a sentenced inmate at the NCF.  Since his arrival at the prison in October 2000, he has been assigned a job in the NCF kitchen.  This action stems from two incidents during which he allegedly was subjected to unreasonable and malicious strip searches.  The first incident occurred on June 6, 2005, when Graham was leaving his kitchen job and walking to his housing unit.  At that time, Hunter[1]

---

[1]Graham specifically alleges that Hunter is not a named defendant in this action.

instructed him to proceed to the "Industries Area," an area located at the top of the stairs leading to the housing blocks. Fifteen other inmates leaving the kitchen were also directed to the same area.  Shortly afterwards, Hunter and Nadeau conducted strip searches on the inmates in full view of other inmates and in view of a surveillance camera monitored by female corrections officers.  Lovan allegedly supervised the strip search procedures.  When Graham objected to being searched in view of the camera, he was told to shut up and strip; Nadeau subsequently conducted a strip search on him.  By subjecting Graham to a strip search in full view of other inmates and in view of female corrections officers, defendants allegedly caused him to suffer humiliation, embarrassment and emotional distress.

The second incident occurred on July 8, 2005, when Graham was leaving his kitchen job and presumably was instructed to wait in line for a strip search.  At that time, other kitchen workers were detained in the hallway and were awaiting strip searches by NCF staff.  Graham was standing fourth in line when three inmates standing before him were called into the laundry room.  According to Graham, it is customary procedure to call three inmates at a time and conduct the strip searches in the privacy of the laundry

4

room.  Nadeau noticed Graham and instructed him and an
unidentified trainee to enter the laundry room.  Nadeau's actions
allegedly were taken in retaliation for Graham's filing of an
administrative grievance against him.  Graham removed his
clothing and submitted to a strip search in accordance with the
corrections officers' instructions.  Following normal strip
search procedures Graham opened his mouth, wagged his tongue,
pulled his ears forward, lifted his scrotum, turned around and
bent over, spread his buttocks apart and lifted his feet for
inspection.

At the conclusion of the search, the trainee directed Graham
to hand him his glasses; Graham responded by asking the trainee
to first remove his gloves.  Graham maintains that the trainee
should have removed his gloves before handling the glasses
because of the health risks associated in conducting strip
searches and handling inmate clothing.  The trainee repeated the
command twice, and each time Graham asked the trainee to first
remove his gloves.  Sweatt then handcuffed Graham while Newton
arrived and observed.  When Graham asked, "You're not going to
lug me down the hall naked are you?", Sweatt responded, "Yes."
In accordance with Newton's request, Sweatt permitted Graham to

put on his undershorts.  Graham was then led into the hall, where
other inmates were awaiting strip searches, and down a quarter-
mile long corridor.  Reindeaux allegedly watched the incident.
When Graham complained that his penis was exposed, Sweatt told
him to shut up.  During the quarter-mile walk down the corridor,
Graham allegedly sustained contusions on both heels and
aggravated an existing spinal problem.  He was then placed in a
holding tank, where he allegedly was observed by women and
children visitors.  He remained there for three hours without
clothing, blankets, or glasses.

Defendants' actions allegedly caused Graham to suffer
extreme embarrassment and humiliation and a severe headache.  As
a result of Graham's noncompliance with the second strip search
and subsequent disciplinary actions initiated against him, he was
placed on reduced pay status.  He allegedly lost prison wages and
his work assignment in the NCF kitchen.

Graham now brings this civil rights action, alleging that
defendants have subjected him to unreasonable and malicious strip
searches in retaliation for his filing of administrative
grievances.  He further alleges that defendants have denied him
prison employment and wages and a certain security

classification.  Lastly, he claims that the NCF grievance system interferes with his meaningful access to the courts.  Defendants' acts and omissions allegedly violate Graham's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and New Hampshire law.

DISCUSSION

I. Section 1983 Claims

"Section 1983 is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)).  A Section 1983 claim has two essential elements: the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law.  Id.  The premise of Graham's Section 1983 claim is that defendants, acting under color of state law, violated his Fourth, Eighth and Fourteenth Amendment rights, as discussed more fully below.

A.   Strip Searches

Graham alleges that defendants violated his Fourth and Eighth Amendment rights by subjecting him to strip searches in

the presence of other inmates, in view of female and children visitors and in view of surveillance cameras monitored by female corrections officers.

    1.   Fourth Amendment Claims

Prisoners do not shed all fundamental protections of the Constitution upon incarceration, but retain those rights that are not inconsistent with their prisoner status or with the legitimate penological objectives of the corrections system. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). "Prisoners, even though incarcerated, have some degree of Fourth Amendment protection, and this protection extends to shielding prisoners from unreasonable visual cavity searches." Seaver v. Manduco, 178 F. Supp. 2d 30, 38 (D. Mass. 2002)(citing Arruda v. Fair, 710 F.2d 886 (1st Cir. 1983)). Prisoner's Fourth Amendment rights, however, "may be subject to restrictions and limitations based on the fact of confinement, the legitimate goals and policies of the penal institution, and the need of the institution to maintain security and internal order." Roberts v. Rhode Island, 239 F.3d 107, 110 (1st Cir. 2001); Bell v. Wolfish, 441 U.S. 520, 545–46 (1979).

"'When an institutional restriction infringes a specific

constitutional guarantee,' – here, the Fourth Amendment right against unreasonable searches, – 'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'"  Roberts, 239 F.3d at 110; quoting Bell, 442 U.S. at 546.  In Bell, the Supreme Court instructed lower courts examining prison strip searches to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  441 U.S. at 559.

Applying the Bell balancing factors, I find that Graham's complaint sufficiently alleges the minimal facts necessary to find that the two strip searches at issue were unreasonable. First, on June 6, 2005, Nadeau subjected Graham to a visual cavity strip search in full view of fifteen other inmates and in view of a surveillance camera ostensibly monitored by female corrections officers.  Despite Graham's objections to being strip searched in view of the camera, Novan and Lovan required him to undergo the procedures.  As a result of defendants' actions, Graham allegedly suffered humiliation, embarrassment and emotional distress.

Second, on July 8, 2005, Nadeau and an unnamed trainee

9

subjected Graham to a visual cavity strip search, allegedly in
retaliation for Graham's filing of an administrative grievance
against Nadeau.  Graham complied with the procedures but refused
to relinquish his eye glasses at the conclusion of the search.
Sweatt immediately handcuffed Graham and permitted him to only
wear his undershorts while he led Graham down a quarter-mile long
corridor in view of other inmates.  Newton and Reindeaux
allegedly observed the incident.  When Graham complained that his
penis was exposed, Sweatt told him to shut up.  During the
incident, Graham allegedly sustained contusions on both heels and
aggravated an existing spinal problem.  He further alleges that
women and children visitors observed him when he nearly naked and
being placed in a holding tank.  Defendants' actions allegedly
caused Graham extreme embarrassment and humiliation.  Through a
series of inmate requests slips submitted from June 2005 through
July 2005,  Graham allegedly notified Blaisdell[2] and Stanley[3] of

---

[2]Although Graham alleges that Cox responded on behalf of
Blaisdell with regard to at least one inmate request slip, he has
not named Cox as a defendant.  If Graham intends to name Cox as a
defendant, he should amend his complaint accordingly.

[3]Although Graham alleges that Crompton responded on behalf
of Stanley with regard to at least one inmate request slip, he
has not named Crompton as a defendant.  If Graham intends to name
Crompton as a defendant, he should amend his complaint
accordingly.

the violations, however, they failed to remedy the problem or take any corrective action.

At this stage of review, the record is silent as to any penological justification for the manner in which the searches were conducted. Accordingly, for purposes of preliminary review, I conclude that Graham has alleged minimal facts to demonstrate that the strip search procedures were unreasonable. Accepting his allegations as true, I conclude that he has alleged cognizable Fourth Amendment claims against Nadeau, Lovan, Sweatt and an unidentified trainee[4] and supervisory liability claims against Blaisdell and Stanley. Because Graham has failed to allege sufficient predicate facts against Newton and Reindeaux, I recommend that the claims against them be dismissed.

---

[4]If Graham wishes to pursue claims against the unnamed trainee, he will have to obtain the defendant's full name through discovery and appropriately move to amend the complaint. He can serve the named defendants with interrogatories to obtain the full name of the unnamed defendant pursuant to Fed. R. Civ. P. 33(a)(1) (providing, in part, that "unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 interrogatories, including all discrete subparts. . . . )

Pursuant to Fed. R. Civ. P. 33(b)(1) (A) and (B), the interrogatories must be answered by the party to whom they are directed or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who must furnish the information available to the party. Graham is further instructed to forward a summons to this Court with the defendant's proper name.

        2.   Eighth Amendment Claims

    "The Eighth Amendment prohibits punishments which involve
the unnecessary and wanton infliction of pain, are grossly
disproportionate to the severity of the crime for which an inmate
was imprisoned, or are totally without penological
justification." Meriwether v. Faulkner, 821 F.2d 408, 415 (7th
Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).
In evaluating Eighth Amendment claims, courts conduct both an
objective and a subjective inquiry.  The objective prong asks
whether the alleged deprivation or condition of confinement is
"sufficiently serious" so that a prison official's act or
omission results in the "denial of the minimal civilized measure
of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834
(1994).  If the conditions complained of meet this threshold,
courts then must determine the prison official's subjective state
of mind; that is, whether he knows that the inmate faces a
substantial risk of serious harm and disregards that risk by
failing to take reasonable measures to abate it.  Id. at 847.  In
the context of bodily searches performed on inmates, only those
searches that are "maliciously motivated, unrelated to
institutional security, and hence 'totally without penological

                              12

justification'" are considered unconstitutional.  <u>Meriwether</u>, 821
F.2d at 418 (quoting <u>Rhodes</u> 452 U.S. at 346).  In other words,
the search must amount to "calculated harassment unrelated to
prison needs."  <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984).

Here, Graham alleges that the strip searches to which he was
subjected violate his Eighth Amendment right to be free from
cruel and unusual punishment.  With regard to the search on June
6, 2005, he alleges that Nadeau and Lovan acted willfully and
maliciously when they subjected him to a visual cavity strip
search in full view of other inmates and in view of a
surveillance camera ostensibly monitored by female corrections
officers.  With regard to the search on July 8, 2005, Graham
alleges that Nadeau, Sweatt, Newton and an unidentified trainee
acted willfully and maliciously when they subjected him to a
strip search on July 8, 2005, forced him to walk a quarter mile
down an NCF corridor while wearing only his undershorts and
placed him in a holding tank for three hours without clothing,
blankets, medication or eye glasses.  As a result of defendants'
actions, Graham allegedly suffered humiliation, embarrassment and
emotional distress.

Graham appears to allege that defendants intended to cause

him embarrassment or discomfort by conducting the searches.  He
further alleges that their actions were taken in reprisal for his
filing of administrative grievances and, therefore, were not
motivated by any legitimate penological interest.  Through a
series of inmate requests slips submitted from June 2005 through
July 2005,  Graham allegedly notified Blaisdell[5] and Stanley[6] of
the alleged violations, however, they failed to remedy the
problem or take any corrective action.  For purposes of
preliminary review, I conclude that Graham has alleged minimum
facts to state Eighth Amendment claims against Nadeau, Lovan,
Sweatt, Newton and an unidentified trainee[7] and supervisory

_____

[5]Although Graham alleges that Cox responded on behalf of
Blaisdell with regard to at least one inmate request slip, he has
not named Cox as a defendant.

[6]Although Graham alleges that Crompton responded on behalf
of Stanley with regard to at least one inmate request slip, he
has not named Crompton as a defendant.

[7]As explained more fully above, if Graham wishes to pursue
claims against the unnamed trainee, he will have to obtain the
defendant's full name through discovery and appropriately move to
amend the complaint.  He can serve the named defendants with
interrogatories to obtain the full name of the unnamed defendant
pursuant to Fed. R. Civ. P. 33(a)(1).  Graham is further
instructed to forward a summons to this Court with the
defendant's proper name.

liability claims against Blaisdell and Stanley.

     B.   <u>Inhumane Conditions of Confinement</u>

Construed liberally, the complaint alleges that Graham was subjected to inhumane conditions of confinement in violation of his Eighth Amendment rights.  Specifically, he alleges that on July 8, 2005, Nadeau, Sweatt, Newton and an unidentified trainee caused him to be placed in a holding tank for three hours without clothing, blankets, medications or eye glasses.

Under the Eighth Amendment, prisoners are entitled to adequate shelter, including the "minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 832–34; <u>Rhodes</u>, 452 U.S. at 347–49.  As stated previously, to successfully allege an Eighth Amendment violation, a plaintiff must first plead facts which, if true, establish that a "sufficiently serious" deprivation occurred.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298–99 (1991).  A plaintiff must show that the conditions he was forced to endure were beyond the bounds of human decency, and that the prison officers intentionally or recklessly subjected him to those conditions.  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) ("extreme deprivations are required to make out a conditions-of-confinement claim"); <u>Wilson</u>, 501 U.S. at 298–301.

15

Here, Graham's complaints do not allege deprivations sufficiently extreme to establish a cognizable Eighth Amendment claim.  His allegations with regard to the frequency, duration and magnitude of the deprivations do not sufficiently demonstrate a serious constitutional harm.  The basis of Graham's claim is that he was placed in a holding tank on one occasion for a duration of three hours during which he was denied clothing, blankets, medications and eye glasses.  He has not identified any ensuing serious constitutional harm.  See Street v. Fair, 918 F.2d 269, 272 (1st Cir. 1990) (inmate must present sufficient facts to confirm seriousness of harm).  Accordingly, I conclude that Graham has failed to state an Eighth Amendment claim premised upon inhumane conditions of confinement and recommend dismissal of this claim in its entirety.

C. Denial of Employment, Wages and Classification

Graham alleges that defendants violated his Fourteenth Amendment right to due process by terminating and/or suspending his prison employment and causing him a loss of wages.[8]  He

---

[8]In a conclusory fashion, Graham alleges that defendants' actions "violated state law, which made it a state tort." Because he fails to sufficiently identify a state law claim, I construe his allegations to allege only a Fourteenth Amendment due process claim.

appears to further allege that defendants denied him a certain security classification.

"[I]t is clear that unless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs." Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986).  New Hampshire law does not create any property or liberty interest in employment for prisoners.  See Brennan v. Cunningham, 126 N.H. 600, 605, 493 A.2d 1213, 1216 (1985) (holding that no liberty interest implicated by Warden's exercise of discretion in transferring a prisoner that results in his inability to work).  Furthermore, the loss of prison employment or wages does not create an atypical and significant hardship.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Accordingly, I conclude that Graham lacks any federal due process claim with respect to the alleged denial of prison employment and wages and, therefore, recommend that this claim be dismissed in its entirety.

Prisoners do not have a constitutionally protected right to be held in a specific security classification.  See Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976); Montanye v. Haymes, 427 U.S. 236, 242

(1976) (discussing that the holding in <u>Meachum</u> dictates that
"[a]s long as the conditions or degree of confinement to which
the prisoner is subjected is within the sentence imposed upon him
and is not otherwise violative of the Constitution, the Due
Process Clause does not in itself subject an inmate's treatment
by prison authorities to judicial oversight."). "[A]n increase
in burdensome conditions does not in itself implicate the due
process clause." <u>Sisbarro v. Warden, Massachusetts State
Penitentiary</u>, 592 F.2d 1, 3 (1st Cir. 1979) (citing <u>Meachum</u>, 427
U.S. at 224-25). Here, Graham does not allege sufficient facts
to state a constitutional violation for any change in his
security classification within the NCF or the addition of
burdensome conditions of confinement occasioned by such change.
Accordingly, I conclude that he has failed to allege a federal
due process claim arising from the denial of a specific security
classification and, therefore, recommend that this claim be
dismissed in its entirety.

     D. <u>Denial of Meaningful Access to the Courts</u>

     Graham broadly alleges that "the Grievance System used by
NCF inmates is flawed and inhibits access to the courts because
there is nothing in the form to allow the inmate to prove that he

has submitted an IRS Grievance Form as required by The Prison Litigation Act before filing a Section 1983 action."  I liberally construe the complaint to allege a Fourteenth Amendment claim arising from the denial of meaningful access to the courts.

"There is a fundamental constitutional right of access to the courts, founded both in the First Amendment guarantee of [the] right to petition for redress of grievances, and in the due process clause which assures that no person will be denied the opportunity to present to the courts their claims concerning violations of fundamental constitutional rights.  McDuffy v. Koval, 226 F. Supp. 2d 541, 548 (D. Del. 2002)(citations omitted).  The right of access to the courts is strongest in the context of constitutional claims and other civil rights actions. See BreMiller v. Cleveland Psychiatric Inst., 898 F. Supp. 572, 582 (N.D. Ohio 1995).  To establish a claim for denial of access to the courts, a plaintiff must show that he was denied access to the courts and suffered actual injury, such as interference with his efforts to pursue a claim.  See McDuffy, 226 F. Supp. 2d at 548.

Accepting Graham's allegations as true, I conclude that he has failed to state any relevant actual injury that resulted from

the alleged denial of meaningful access to the courts.  The basis of his complaint appears to be that defendants failed to adequately respond to his grievances.  While Graham alleges that the NCF grievance system prevents him from demonstrating exhaustion of administrative remedies, the record in this action reveals that he was able to adequately demonstrate exhaustion of his remedies by submitting grievances to both the NCF and the NHDOC.  He has not alleged any ensuing constitutional harm resulting from the NCF grievance system or defendants' alleged failure to adequately respond to his grievances; nor has he identified any actions by the defendants that frustrated or impeded a specific legal claim.  Without demonstrating that defendants' actions prevented him from participating meaningfully in the legal process, Graham fails to allege any constitutional deprivation.  Accordingly, I recommend dismissal of this claim in its entirety.

II.  <u>State Law Claims</u>

    A.  <u>Emotional Distress</u>

Graham alleges a state law claim for intentional infliction of emotional distress against Blaisdell, Stanley, Nadeau, Lovan, Newton, Sweatt and an unidentified trainee.

"The New Hampshire Supreme Court has adopted the provisions of section 46 of the Restatement (Second) of Torts and recognized that 'one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress.'"  Amatucci v. Hamilton, Civil No. 05-cv-259-SM, 2007 WL 1825177 at *6 (D.N.H. June 25, 2007)(quoting Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 260, 723 A.2d 30, 33 (1998)).  A plaintiff must "point to conduct on the part of the defendant that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Id. (citing Restatement (Second) of Torts § 46, cmt.d.).

Here, Graham alleges that by subjecting him to unreasonable and malicious strip searches, defendants caused him to experience severe emotional harm, including embarrassment and humiliation. He further alleges that during the strip search conducted on July 8, 2005, he sustained contusions on both heels and aggravated an existing spinal problem.  Graham appears to allege that the stress he has endured as a result of defendants' conduct has caused him to suffer both physical and emotional harm.  To the

extent Graham alleges that defendant's actions were extreme and outrageous and caused him emotional distress and the alleged related physical harm, I conclude that he has stated a cognizable state law claim based on intentional infliction of emotional distress.  For purposes of preliminary review, he has alleged the minimum facts necessary to state a claim for intentional infliction of emotional distress against Blaisdell, Stanley, Nadeau, Lovan, Sweatt and an unidentified trainee[9].

B.    Invasion of Privacy

Graham alleges that defendants' use of a camera during the course of the strip searches at issue violated his right to privacy under New Hampshire law.  In support of his claim, he relies upon New Hampshire Revised Statute Annotated ("RSA") § 644:9, I(a) which states, in relevant part:

> I.    A person is guilty of a class A misdemeanor if such person unlawfully and without the consent of the persons entitled to privacy therein, installs or uses:
>
> (a) Any devise for the purpose of observing,

---

[9]As explained more fully above, if Graham wishes to pursue claims against the unnamed trainee, he will have to obtain the defendant's full name through discovery and appropriately move to amend the complaint.  He can serve the named defendants with interrogatories to obtain the full name of the unnamed defendant pursuant to Fed. R. Civ. P. 33(a)(1).  Graham is further instructed to forward a summons to this Court with the defendant's proper name.

> photographing, recording, amplifying,
> broadcasting, or in any way transmitting images or
> sounds of the private body parts of a person
> including the genitals, buttocks, or female
> breasts, or a person's body underneath that
> person's clothing.

N.H. Rev. Stat. Ann. § 644:9, I(a) (2007).

Although Graham characterizes his claim as a "tortious act" under New Hampshire state law, he fails to identify any cognizable civil claim.  Instead, his allegations appear to arise solely under criminal law.  Because Graham does not have an enforceable right to institute a criminal prosecution, <u>see</u> <u>Lietzke v. City of Montgomery</u>, Civil Action NO 2:07cv588-ID, WL 2126525, slip op. at *1 (M.D. Ala. 2007)(dismissing plaintiff's "criminal trespassing claim" on the basis that "no citizen has as enforceable right to institute a criminal prosecution), I recommend that his state law criminal claim, premised upon the violation of privacy under RSA § 644:9, be dismissed.

III.  <u>Official Capacity</u>

Construed liberally, the complaint seeks injunctive and monetary relief for wrongs committed by the defendants as state actors in their official capacities.  The Eleventh Amendment bars suits for damages against state entities and state agents working in their official capacities unless the state has expressly

waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 70–71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).  Official capacity actions against state actors for prospective injunctive relief, however, are not treated as actions against the state and may be considered under Section 1983.  See Will, 491 U.S. at 71 n.10.  To the extent Graham brings official capacity claims for monetary relief against the remaining defendants, all of whom are NCF and/or NHDOC employees, I recommend such claims be dismissed. On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  See Will, 491 U.S. at 71 n.10.  Thus, Graham is not barred from bringing viable claims for prospective injunctive relief against the defendants in their official capacities.

<u>CONCLUSION</u>

For the reasons stated above, I find that Graham has alleged the following claims: (1) Fourth Amendment claims, arising from unreasonable strip searches, against Blaisdell, Stanley, Nadeau, Lovan, Sweatt and an unidentified trainee; (2) Eighth Amendment claims, arising from malicious  strip searches, against Blaisdell, Stanley, Nadeau, Lovan, Sweatt, Newton and an unidentified trainee; and (3) state law claims, based on intentional infliction of emotional distress, against Blaisdell, Stanley, Nadeau, Lovan, Sweatt and an unidentified trainee.  I recommend dismissal of all remaining claims.  Accordingly, by separate order issued simultaneously with this report and recommendation, I authorize the above claims to proceed.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, she must do so by objection filed within ten (10) days of receipt of this report and recommendation, or she must properly move to amend the complaint.

Any further objection to this report and recommendation must

be filed within ten (10) days of receipt of this notice.  Failure

to file objections within the specified time waives the right to

appeal the district court's order.  See 28 U.S.C. § 636(b)(1);

see also Unauthorized Practice of Law Committee v. Gordon, 979

F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete,

792 F.2d 4, 6 (1st Cir. 1986).


James R. Muirhead
United States Magistrate Judge

Date: April 15, 2008

cc: Melvin Graham, pro se